## TEUTONIA CLUB *v.* HOWARD.

1. A social club paying the specific tax provided in the Civil Code (1910), § 933, for keeping or permitting to be kept intoxicating or malt liquors in a room where its members assemble or frequent, is not authorized to sell such liquors to its members or others.

(*a*) Under the evidence the court was authorized to find, for the purposes of an interlocutory injunction, that the club (a corporation) and its manager were engaged in the illegal sale of intoxicating liquor, and did not abuse its discretion in enjoining the further sale of intoxicating liquors on the premises until the final hearing in a proceeding brought under the blind-tiger-abatement act contained in the Civil Code (1910), § 5335.

2. So much of the order as adjudicated the club to be a nuisance and abated as such is tantamount to a final judgment, which can not be rendered on an interlocutory hearing; and it is directed that this adjudication be stricken from the order.

DECEMBER 9, 1913.

Injunction. Before Judge Mathews. Bibb superior court. September 27, 1913.

*John R. Cooper, Samuel B. Hunter, Hall & Roberts, Roland Ellis, J. E. Hall,* and *Alexander Akerman,* for plaintiff in error.

*R. D. Feagin,* contra.

EVANS, P. J.    The prohibition act declares it to be unlawful for any person to sell or barter, or give away to induce trade at any place of business, or to keep or furnish at any public place, or manufacture, or keep on hand at their place of business any alcoholic, spirituous, malt, or intoxicating liquors, or other drinks which if drunk to excess will produce intoxication. Penal Code, § 426. In the tax act of 1909, found in the Civil Code, § 933, a specific tax is imposed upon "every social or fraternal club, or corporation, association, or organization of any persons who shall keep or permit to be kept in any room or place (or in any place connected therewith, directly or indirectly), in which the members of such club, corporation, organization, or association assemble or frequent, any intoxicating liquors or spirituous or malt liquors of any kind: . . Provided, that nothing in this section shall be construed to license or permit the keeping of any intoxicating, spirituous, or malt liquors in any place now prohibited by law, or which may hereafter be so prohibited." These two provisions of law were construed in relation to each other in *Union & Mechanics Club* v. *Atlanta,* 136 *Ga.* 721 (71 S. E. 1060). In that case it was

held that "the specific tax laid by the State upon social and fraternal clubs was imposed, not as a tax upon any business or occupation, but in the exercise of its police power in regulating the storage and use of intoxicating liquors. The exaction of a tax on locker clubs is not a permission to such clubs to do a blind-tiger business, or to evade the liquor laws prohibiting the sale of intoxicating liquor. Sales of intoxicating or malt or other drinks, which if drunk to excess will produce intoxication, can not be legally made at such clubs, since such sales are denounced as criminal by the general prohibition act. The authority to store intoxicating liquor in the club-room for the use of club members does not embrace permission to sell it, or to use it in any way prohibited by law." The law absolutely prohibits the sale of intoxicating or malt liquors, and it only remains to apply the law to the facts in the case before us. Certain citizens filed a petition under the Civil Code, § 5335, to enjoin the Teutonia Club and its manager from maintaining a nuisance by selling spirituous, malt, or intoxicating liquors in violation of law. On the hearing for an interlocutory injunction one witness swore that he had visited the club on several occasions, and saw whisky and beer sold from the bar to any one who called for same and paid the price. He had seen whisky sold over the bar, both by the drink and by the bottle, and had bought some himself. Another witness testified, that he had bought whisky and beer from the club, having access to the same whenever he chose; and that there was no formal initiation of members connected with the club, and no dues, to his knowledge. A justice of the peace testified, that the club-room is in the rear and in plain view of his office; that he had seen whisky sold in the club many times, both by the drink and by the bottle, to different people; that he as well as others, not members of the club, had free access thereto whenever they cared to enter. Another witness testified that he paid no dues, but had free access to the club, and had purchased and drunk beer in the club-room on several occasions. The deputy sheriff testified that he, under a preliminary order in this case, seized two dray-loads of whisky, taken from a storeroom separated from the bar by a partition, there being a connecting door between the storeroom and the club-room. Another deputy testified that he found about six or eight quarts of whisky behind the bar, and a large stock of whisky in the storeroom behind the bar, connecting with the club-room. The man in charge of the

club-room had the key to the storeroom, and opened it at his request. There was also beer in the club-room in an ice box. It also appeared that the club had òbtained from the United States commissioner of internal revenue a retail liquor dealer's license, which was in force at the time of the filing of the petition; and that it had paid to the tax-collector the specific tax imposed on social clubs by the act of 1909. In reply to this testimony, Cutro, the manager, testified that the club was organized and run by its members as a social club for their comfort and convenience, all of whom were required to pay dues as members; that the witnesses who testified to the purchase of whisky were members of the club, and whenever they took drinks therein they did so as members; that the witness who testified as to the purchase of beer was not a member of the club, and if he ever procured beer in the club-room he did so clandestinely, or at the invitation of some of his friends who were members of the club; that he had read the affidavit of the justice of the peace before referred to. "This deponent says that the statements therein made that said [witness] has seen whisky sold in said club may be true, but whatever whisky or beer the said [witness] or any one else may have seen consumed, sold, or delivered in said club was sold by and for the members of said club, who were entitled to the privileges of the same, and not to any other person."

In many jurisdictions where the sale of intoxicating liquors is prohibited, or allowed only by license, questions have arisen whether the dispensing of liquor by a club to its members under the facts of each case constituted a sale. If the transaction amounted to a sale, the statute has been held to apply. In the instant case the evidence authorized a finding that the plaintiff in error paid what may be denominated the locker-club tax, and the United States retail liquor dealer's tax, and sold over its bar intoxicating liquors to persons, some of whom were members and others who "clandestinely" patronized the bar. Even the manager of the club made no pretense that the transaction between him and the members was not a sale, but frankly admitted that he sold intoxicating liquors to members of his club. A sale of intoxicating liquor by the club to its members is just as much a violation of law as would be a sale of such liquors to non-members. The law forbids all persons (with the statutory exception) from selling, directly or indirectly,

6

intoxicating liquors, and the act imposing a tax on social organizations does not confer upon them any authority to sell liquor.

The order passed by the court was as follows: "After hearing the evidence and argument, it is considered, ordered, and adjudged that the said Teutonia Club is a nuisance, it being made to appear that the same is a blind tiger where intoxicating liquors are being sold in violation of law; and the said Teutonia Club aforesaid is hereby ordered abated as such, and the said Teutonia Club and the said Tony Cutro, mgr., are hereby restrained and enjoined from the sale of intoxicating liquors, whether spirituous, alcoholic, or malt, on said premises until the further order of this court." So much of the order as restrains the club and its manager from the sale of intoxicating liquors until the further order of the court is supported by the evidence, and was the proper subject-matter of an interlocutory injunction. We think, however, that the order granting a temporary injunction should be modified by striking therefrom the adjudication by the court that the club was a nuisance and abated as such. The object of the litigation is to abate the alleged blind tiger as a nuisance under the statute; but this can not be done except upon a final hearing of the case. That portion of the order should be stricken, and the order left to remain as one restraining the defendants from the sale of intoxicating liquors on the premises until the further order of the court.

*Judgment affirmed, with direction. All· the Justices concur.*