DAVIS *et al. v.* STARK, solicitor-general.

No. 14948.   SEPTEMBER 7, 1944.

*W. L. Nix,* for plaintiffs in error.

*Hope D. Stark, solicitor-general,* contra.

DUCKWORTH, Justice. It has been the considered judgment of the General Assembly that a building or structure in which is kept spirituous liquors or beverages, defined in the Code, § 58-101, for the purpose of sale or other illegal disposition is a common nuisance. This judgment has twice been enacted into law, once

in 1899 (Code, § 58-110) and again in 1915 (Code, § 58-109), and it is there provided that such common nuisances may be enjoined or abated. This court has repeatedly sustained judgments of the trial courts granting interlocutory orders directing that such a building be padlocked. *Bracewell* v. *Cook,* 192 *Ga.* 678 (16 S. E. 2d, 432); *Lokey* v. *Davis,* 194 *Ga.* 175 (21 S. E. 2d, 69); *Pullen* v. *Meadors,* 196 *Ga.* 796 (27 S. E. 2d, 655). The resolute purpose of the legislature to protect the public against the evils of such common nuisances is manifested by the provisions of the Code, § 58-107, where it is in substance declared that the keeping of any of the prohibited liquors or beverages in any building not exclusively used for a dwelling "shall be prima facie evidence that they are kept for sale or with intent to dispose of same contrary to the law;" and the provisions of § 58-122, which declare that any and all the property used in such illegal keeping of liquors or beverages is contraband, in which the owner has no property right, and authorize the State to destroy or seize them. In providing for the abatement of such a nuisance rather than reliance upon criminal prosecution and an order of court enjoining it, both of which are subject to evasion, the legislature has by the law authorizing abatement made available an immediate and effective remedy for a complete removal of any injurious effect of such nuisances upon the public. In view of the provisions of the statutes and the decisions of this court, there is now no room for reasonable doubt of the validity of the statutes and the authority of the trial court to render judgments giving full effect to the law. But it is contended that abatement under the statute is authorized only after it is established by the verdict of a jury that the building is being so used, and hence the interlocutory order here complained of is unauthorized. The instant judgment does not purport to be permanent. .It purports to be only interlocutory, and is effective only until the case can be tried before a jury. If it be said that this judgment, directing that the premises be padlocked even for a limited period, amounts to taking the defendants' property, the answer is that the language of the judgment itself disproves such a contention. All interlocutory-injunction orders have the effect of depriving a defendant of property or the full exercise of his freedom, but this is only to the extent that it is necessary to insure against his alleged wrong until the

issues involved can be adjudicated upon a final trial. In *Rowland v. Morris,* 152 *Ga.* 842 (111 S. E. 389), it was held that the due-process clauses of the State and Federal constitutions were not designed to "interfere with the police power of the State," and that if the statute there involved falls within the circle of the police power, it lies out of the orbit of the due-process clauses. That decision defines the police power of the State as follows: "It is universally conceded to include everything essential to the public safety, health, and morals, and to justify the destruction or abatement, by summary proceedings, of whatever may be regarded as a public nuisance." There, the case involved the tick-eradication statute, which authorized the inspectors to kill infested cattle, and it was held that, although the warrant under which the officials acted was for reasons stated invalid, the action of the officers was legal, since a warrant was not necessary. The owners of the cattle contended that they should be afforded an opportunity to prove that the cattle were not infested, but this court refused to sustain that contention. In the present case, a full hearing after service of the petition was had, and the judgment complained of is based upon and supported by the evidence introduced at such hearing.

In the absence of any statutory expansion of equity jurisdiction, a public nuisance may be abated in equity by injunction only. *Lofton* v. *Collins,* 117 *Ga.* 434 (43 S. E. 708) ; *Walker* v. *McNelly,* 121 *Ga.* 114 (48 S. E. 718). See also *State* v. *Atlantic Ice &c. Co.,* 180 *Ga.* 285 (178 S. E. 743). In 1916, when the decisions of this court in *Brindle* v. *Copeland,* 145 *Ga.* 398 (4) (89 S. E. 332), and *Martin* v. *Copeland,* 145 *Ga.* 399 (89 S. E. 333), were rendered, there existed in this State no statute expanding equity jurisdiction with reference to abatement of a lewd house as a public nuisance. Accordingly, in each of those cases, which were proceedings in equity to abate lewd houses as public nuisances, the interlocutory judgments excepted to, in addition to enjoining the further operation of the houses, ordered them closed; and this court ordered the judgments modified by striking therefrom the provision ordering the houses closed, ruling that the trial judge had no authority under the law to order the houses closed. In the following year, 1917, the legislature enacted a law expressly empowering courts of equity to abate such lewd houses by ordering

them closed. Code, §§ 72-301 et seq. The statute under which the present petition is brought expressly empowers courts of equity to abate or enjoin as a public nuisance a building or structure in which is kept spirituous liquors or beverages for the purpose of sale or other illegal disposition. Hence, an order closing such a building is authorized by law, and for the reasons stated, the decisions in the *Lofton* and *Walker* cases, supra, are not in conflict with the ruling now made.

The plaintiffs in error recognize the provisions of the statute making the keeping of liquor and beverages, which they admit were found in the building here involved, prima facie evidence of an intent to sell or illegally dispose of the same, but argue that this prima facie case was met and completely refuted by their testimony showing that they intended to use the liquor and beverages, approximately fourteen quarts, at a party to be given at a later date to their son-in-law and daughter to which about twenty-five or thirty guests were to be invited. Had the evidence stopped here, there would have been an issue of fact which would have authorized the trial judge, in the exercise of his discretion, to render the judgment complained of. *Loh* v. *Howard,* 141 *Ga.* 509 (81 S. E. 198). But there are other circumstances shown by the evidence, sustaining the prima facie case, such as bottles partly filled with liquor, glasses containing the odor of liquor, and at least one containing liquor itself, and a number of glasses generally used for serving mixed drinks of liquor were all found in the building; and Mrs. Davis, when informed at the door by the officers that their sole object was to search for liquor, at first refused to admit them. The judgment excepted to was authorized by the law and the evidence.

*Judgment affirmed.* *All the Justices concur.*